UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jennifer Fisher

    v.                                                                                             Civil No. 23-cv-00470-SE

Southern New Hampshire Medical Center                   Opinion No. 2025 DNH 038

Order

Jennifer Fisher brought a series of disability claims under the Americans with Disabilities Act, 42 U.S.C § 12101, *et seq*., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, against her former employer, Southern New Hampshire Medical Center ("Southern"). Southern now moves to dismiss one of Fisher's claims, a retaliation claim under the ADA. Doc. no. 18.

Standard of Review

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. To test a complaint's sufficiency, the court must first identify and disregard statements that "merely offer 'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" Ocasio–Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678 (alterations omitted)). Second, the court must credit as true all nonconclusory factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible. See id.

Background[1]

Fisher has a set of medical conditions that make her highly sensitive to certain noises, especially at loud volumes. Fisher alleges that in 2018, while working at Southern, her colleagues "began making intentional throat clearing noises, speaking louder than was necessary …, and ma[king] excessive noises while at their desks." Doc. no. 14, ¶ 14. Even though she took a job with another department in 2019, Fisher's co-workers, and eventually her supervisors, continued to harass her for the next three years. Fisher repeatedly complained to human resources and other administrative departments about this behavior. After Fisher complained, some of her supervisors escalated their harassment by taking phone calls on speaker phone at a high volume. Fisher asked for accommodations, including a transfer to another department. Southern granted some of her requests, but did not transfer her.

In early 2021, around the same time that she requested accommodations, Fisher also "applied for a few open internal positions," doc. no. 18-2, at 11, including a dispatcher position, doc. no. 14, ¶ 33. The qualifications for the dispatcher position were the same as the qualifications for the position that she held at that time. Fisher participated in two rounds of interviews for the dispatcher position.

On June 28, 2021, because of the ongoing harassment and Southern's refusal to transfer her, Fisher "unwillingly submitted her resignation letter." Doc. no. 14, ¶ 45. On August 3, 2021, Fisher found out that she did not receive the dispatcher position. Southern told Fisher that "the

---

[1] Because this order focuses primarily on procedural issues, the court briefly recites the facts, skipping over many of the finer details in the amended complaint. The court draws the procedural facts from the allegations in the amended complaint and from administrative records appended to the defendant's memorandum in support of its motion to dismiss without objection.

hiring manager had chosen a different candidate." Id., ¶ 46. However, on September 15, 2021, Southern began advertising a new open "Facilities Coordinator" position, which had a job description that was "mostly the same as the" dispatcher position. Id., ¶ 47.

On December 27, 2021, Fisher dual-filed a charge of discrimination ("charge") with the New Hampshire Commission for Human Rights ("Commission") and the Equal Employment Opportunity Commission ("EEOC"). Fisher checked boxes for "disability" and "other" on the Commission cover sheet and typed "RSA 354-A" next to the "other" box. Doc. no. 18-1 at 2. She did not check the box for "retaliation." On the EEOC cover sheet, however, the boxes for "disability" and "retaliation" are checked. Doc. no. 18-1 at 5. The charge alleged that Fisher's colleagues harassed her and continued to do so after she complained. It claimed that Southern failed to accommodate her by moving her to a quiet space or transferring her to another department. It did not mention any of the details surrounding Southern's alleged refusal to hire Fisher.

After Southern responded to Fisher's charge, Fisher submitted a rebuttal. There, Fisher reiterated the facts in her charge. In describing her failure to accommodate claim, Fisher added that she "had applied for a few open internal positions." Doc. no. 18-2 at 11. Fisher alleges in her amended complaint that she also informed her administrative investigator, over the phone and in writing, that Southern "failed to hire her for a different position because of her disability." Doc. no. 14, ¶ 10.

Fisher filed suit in this court after receiving a right to sue letter. On March 7, 2024, Fisher filed the operative complaint, which asserts four claims under the ADA and Section 504: failure to accommodate (Count I), hostile work environment (Count II), retaliation (Count III), and

wrongful termination (Count IV). Count III is predicated on Southern's decision not to hire Fisher for the dispatcher position.

Discussion

Southern moves to dismiss Fisher's retaliation claim under the ADA on two grounds. First, it argues that Fisher failed to exhaust her claim because she did not adequately allege in her administrative submissions that Southern refused to hire her in retaliation for her protected conduct. Second, it argues that even if Fisher did adequately describe the claim at some point during the administrative process, by the time she did so, it was untimely. Because the court agrees that Fisher failed to exhaust her ADA retaliation claim, it does not address Southern's timeliness argument.[2]

"[A]n employee alleging" disability discrimination under the ADA "must file an administrative claim with the EEOC or with a parallel state agency before" she can bring a civil action in federal court. Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 31 (1st Cir. 2009). Among the many important purposes served by this requirement, the most important are that "it gives notice to both the employer and the agency of an alleged violation and affords an opportunity to swiftly and informally take any corrective action necessary to reconcile the violation." Id.

---

[2] Southern has not moved to dismiss Fisher's Section 504 claim in Count III. Thus, that portion of her retaliation claim survives. For the sake of clarity, the court notes that Southern's exhaustion argument would fail against Fisher's Section 504 claim because "Section 504 does not require administrative exhaustion." Rae v. Woburn Pub. Sch., 113 F.4th 86, 99 n.2 (1st Cir. 2024) (quotation and brackets omitted). Southern's timeliness defense would likewise fail. This court would apply a three-year statute of limitations to Fisher's Section 504 claims. See id. at 99-100; N.H. RSA 508:4. Fisher discovered she had not been hired for the job in August 2021 and filed suit in October 2023.

Filing an administrative complaint "does not open the courthouse door to all claims of discrimination. Rather, the scope of the federal court complaint is constrained by the allegations made in the administrative complaint: the former must bear some close relation to the latter." Velazquez-Ortiz v. Vilsack, 657 F. 3d 64, 71 (1st Cir. 2011) (quotation omitted). Still, courts "must review not only what the specific language of the agency charge states but also what the EEOC's investigation based on that charge could reasonably be expected to uncover." Jenkins v. Hous. Ct. Dep't, 16 F.4th 8, 17 (1st Cir. 2021) (quotation omitted); see Thornton, 587 F.3d at 32. Generally, courts will consider administrative documents beyond charging documents only when "the respondent received and had an opportunity to respond to them, a position that aligns with the administrative charge's notice function." Moore v. Granite Bay Care, Inc., No. 17-cv-489-NT, 2018 WL 3463256, at *4 n.4 (D. Me. July 18, 2018).

Fisher's administrative filings contain no allegations that would lead a reasonable investigation to uncover the retaliation claim that appears in her complaint. Fisher's charge does not mention any of the events underlying her retaliation claim, even though, by the time Fisher filed her charge, they had all come to pass. By September 15, 2021, Fisher had already applied and interviewed for the dispatcher position, she had been told that the hiring manager had chosen a different candidate, and Southern had already posted the Facilities Coordinator position. Fisher filed her charge more than three months later, on December 27, 2021. Even in her rebuttal, Fisher notes only that she "had applied for a few open internal positions." Doc. no. 18-2 at 11. Importantly, she makes this reference in the context of an argument about her employer's alleged failure to accommodate her disability. Her administrative documents do not allege that Southern failed to hire her, especially for engaging in protected activity. Nor do they mention that Southern later posted an opening for a position similar to the position for which Fisher applied.

Fisher offers two arguments as to why a reasonable investigation into her administrative submissions should have uncovered a retaliation claim based on Southern's failure to hire her. First, she argues that, taken together, the checked retaliation box on her charge and the references to her transfer requests should have prompted an investigation that would have uncovered her retaliation claim. But, in the context of her administrative documents, the checked retaliation box and references to her transfer requests appear to be wholly unrelated. Though the retaliation box is checked on Fisher's EEOC cover sheet, her charge narrative describes certain facts and then states, "I assert that I was discriminated against due to my disabilities, by way of failure to accommodate and harassment, which led to constructive discharge." Doc. no. 13-1 at 4. Other than the checked box, her charge is silent as to retaliation. To understand the retaliation claim, the court must look to Fisher's rebuttal. It begins with concerns about "Fisher's continued reports of escalated harassment and retaliation for months after meeting with the Compliance Officer," and continues throughout to discuss retaliation in the context of escalated harassment. Doc. no. 18-2 at 1 and passim. As to her transfer requests, Fisher concedes that she made references to them only in the context of her failure to accommodate claim. It would be unreasonable to expect an investigator to connect these two unrelated allegations to uncover an additional cause of action that Fisher did not mention and that neither she nor her attorney evidently conceived at the time of her administrative process. There is thus no reason to think that these unrelated aspects of her administrative documents "open the courthouse door" to the ADA retaliation claim contained in Fisher's complaint. Velazquez-Ortiz, 657 F.3d at 71.

Second, Fisher argues that she spoke and wrote to her administrative investigator about Southern's failure to hire her. But in her amended complaint, Fisher makes clear that when she spoke to the investigator about the incident, she told him that Southern "failed to hire her for a

different position because of her disability." Doc. no. 14, ¶ 10.[3] That is not an allegation of retaliation; instead, it is an allegation of direct disability discrimination. Fisher cannot claim administrative exhaustion by cloaking a reference to a separate claim in a new legal theory. See Hicks v. Napolitano, No. 11-11517-RGS, 2013 WL 1992204, at *1 n.1 (D. Mass. May 10, 2013) (declining to interpret a charge as alleging a hostile work environment where a "generous reading" of the charge alleges only direct "gender discrimination").

Conclusion

For the foregoing reasons, the court grants Southern's partial motion to dismiss Count III insofar as it alleges retaliation under the ADA (doc. no. 17).

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

March 18, 2025

cc: Counsel of Record

---

[3] Because it does not alter the outcome of this order, the court will consider this alleged conversation with the investigator even though it might otherwise refuse to do so because Southern did not have a reasonable opportunity to receive and respond to its contents. See Moore, 2018 WL 3463256, at *4 n.4.

7